UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTONIO MARAVILLA, JR.,

             Plaintiff,

    v.

ROSAS BROTHERS CONSTRUCTION, INC., et al.,

             Defendants.

Case No. 16-cv-06117-JST

**STATEMENT OF DECISION**

United States District Court
Northern District of California

      This matter came before the Court for trial on October 15 and 17, 2018.  Plaintiff Antonio Maravilla, Jr., was represented by Tomas E. Margain.  Defendants Rosas Brothers Construction, Inc.; Victor Manuel Rosas; Jose Humberto Rosas; and Jose Luis Rosas were represented by Kevin M. Christensen.  The parties submitted proposed findings of fact and conclusions of law on December 7, 2018.  ECF Nos. 40, 41.

      Having considered the evidence and the parties' arguments,[1] and good cause appearing, the Court now finds and orders as follows:

## I.    BACKGROUND

      Plaintiff Antonio Maravilla, Jr., filed this action on October 24, 2016, alleging the following claims:  failure to pay minimum wage or overtime pursuant to the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b);[2] failure to pay minimum wage or overtime,

---

[1] The Court has also incorporated the parties' stipulated facts where appropriate.

[2] Although the FLSA claim in Maravilla's complaint is captioned "Failure To Pay Overtime," the pleading makes clear that his FLSA claim includes violation of the minimum wage requirements as well.  ECF No. 1 ¶ 18 ("In failing to pay Plaintiff overtime wages at one-and-one-half times his regular rate of pay, *and for all hours worked,* DEFENDANTS willfully violated the FLSA.").  Defendant does not contend otherwise.

Cal. Lab. Code §§ 1194, 1194.2; failure to provide an itemized wage statement, Cal. Lab. Code § 226; waiting time penalties, Cal. Lab. Code § 203; and unfair competition, Cal. Bus. & Prof. Code § 17200 *et seq.*

Maravilla worked for Defendant Rosas Brothers Construction, Inc. ("Rosas Brothers"), a concrete contractor that primarily performs municipal sidewalk construction. This includes building or retrofitting ADA-compliant ramps installed at intersections to allow individuals with mobility restrictions to use a ramp to move from the street to the sidewalk. The work often involves demolishing existing sidewalks so that new sidewalks can be installed. Defendants Victor Manuel Rosas, Jose Humberto Rosas, and Jose Luis Rosas (collectively, "the Rosas brothers") – the brothers for whom the business is named – jointly own and operate the firm.

Maravilla was employed by Rosas Brothers as a heavy-equipment operator. He primarily operated a backhoe. He performed demolition and removal of existing sidewalks; ground excavation; spreading base rock; and compacting. He also operated a dump truck to bring debris from the job site back to the yard or to a landfill, or to take debris from the yard to the landfill. Although his hourly pay rose over the period of this lawsuit, his rate of pay was the same for any given job during the same time period.

Two different Rosas Brothers's compensation practices are at issue here. First, any time a Rosas Brothers employee worked more than eight hours per day, the hours were "banked," i.e., they were recorded but not immediately paid. Virtually all overtime hours were banked, meaning they were not paid on the pay period following the end of the workweek. There were also whole weeks where regular and overtime hours were banked. This system was already in place when Maravilla began working at Rosas Brothers.

Twice a year, in September and December, Rosas Brothers would issue checks to its employees for their banked hours.[3] The banked hours were paid at a straight-time rate, not overtime, even though the banked hours represented hours worked in excess of eight hours per day or 40 hours per week. Maravilla kept a contemporaneous log of his actual work time so that

---

[3] In April 2016, Maravilla requested and received an early banked hours check.

information could be provided to Rosas Brothers when it calculated his banked hours backpay. The parties agree that Maravilla's regular hourly compensation, and the rate at which his banked hours were compensated, was as follows:  2012 – $64.50; 2013 – $67.00; 2014 – $68.83; 2015 – $70.95; and 2016 – $73.95.[4]

When Maravilla worked less than 40 hours in a workweek, the difference was deducted from his banked hours.  For example, if Maravilla worked 35 hours in a given week, and he had accumulated 100 banked hours to date that year, his banked hours would be reduced to 95 hours. The effect of the banked hours system was both to (1) delay the payment of compensation owed to Maravilla (and other Rosas Brothers employees) and (2) underpay such compensation.

Initially, the Rosas brothers completed Maravilla's time cards for him.  They intentionally misstated the times during which Maravilla was working and understated the total number of hours worked.  They knew when they completed the cards that they were false.  Eventually, Maravilla filled out his own time cards.  However, pursuant to instructions from the Rosas brothers, he did not record all the time he spent working.  He never wrote down more than eight hours in one work day, and he kept a record of his banked hours in a separate journal.

At one point, Maravilla told Victor Rosas that he wanted to be paid according to the law. Victor told him that Rosas Brothers was not able to pay overtime.

The majority of these facts were not disputed.  Defendants freely admitted that they used a banked hours system; that banked hours were never paid at an overtime rate, but only at straight time; and that employees were not paid for banked hours at the time they were worked, but only at the September and December intervals.  Defendants disputed only the number of banked hours at issue, although – unlike Maravilla – they kept no contemporaneous records of banked hours.  They did submit computer payroll records, but there was no evidence that these records were created contemporaneously, and Victor Rosas's testimony about the company's banked hours records was internally contradictory.  For purposes of this order, the Court therefore accepts Maravilla's

---

[4] It is not clear in the record whether these figures represent Maravilla's hourly rate of pay or that rate of pay plus union fringe benefits.  Victor Rosas testified both at deposition and trial that hours were banked at the latter rate.  Because the record contains only a single hourly rate for each year that Maravilla worked for Rosas Brothers, the Court uses those rates.

1  calculation of his banked hours and rejects Rosas Brothers's records as not credible.

2      The second compensation practice at issue is Rosas Brothers's alleged failure to pay for all

3  hours worked (Maravilla's "off-the-clock claim").  Maravilla alleged that Rosas Brothers paid him

4  only for work performed beginning at 7:30 a.m. each day, even though they required him to arrive

5  at the yard before that and to drive from the yard to the job site.  He further claimed that hours

6  worked before 7:30 a.m. or hours spent driving from the yard to the job site were not included in

7  banked hours and were not otherwise compensated.  Maravilla testified that he also sometimes had

8  to return equipment to the Rosas Brothers yard at the end of the day.

9      Maravilla did not keep contemporaneous records of the additional time he spent at the yard

10  or transiting to and from the job site, as he did with banked hours.  At trial, he was unable to

11  provide any estimate of the total time involved, although he estimated that he spent at least one-

12  half hour per day working before the start time reflected in his log (which was also reflected in

13  Rosas Brothers's payroll records).  He further testified that, pursuant to instructions from the

14  Rosas brothers, he never wrote down any of this time on his time card.

15      Unlike its admission regarding the banked hours system, Rosas Brothers did not concede

16  Maravilla's claim for additional hours worked at the beginning and end of the work day.  Victor

17  Rosas testified that Maravilla rarely came to the yard and rarely drove equipment, such as a

18  backhoe, to the job site.  According to him, that equipment was driven there by someone else over

19  the weekend to be ready when the work week started.

20      Rosas Brothers was investigated by the U.S. Department of Labor in 2014 for violation of

21  wage and hour laws.  It settled the case in April 2014.  In the course of the investigation, and as

22  part of the settlement, the Department of Labor explicitly told Victor Rosas that what the company

23  was doing by banking hours and not paying overtime was illegal.  Pursuant to the settlement,

24  Rosas Brothers made a payment to each of its employees in the amount of 50 percent of its prior

25  banked hours payments to account for overtime.  Even after this investigation, however, the

26  company did not change its practices.  At trial, Victor Rosas testified as follows:

27          Q.  And, Mr. Rosas, after the investigation and the settlement with
           the Department of Labor, Rosas Brothers kept banking hours for
28         employees; correct?

4

A.  Correct.

Q.  Why?

A.  I'm going to say for convenience, so both not only the employees, you know, our – you know, to be consistent – you know, more consistent, you know, payroll for them to get and at the same time we was actually getting jobs done.

ECF No. 33 (Reporter's Transcript, Oct. 17, 2018) ("RT") at 142:25-143:8.

From time to time, Rosas Brothers would pay Maravilla extra money, but this was in the nature of a bonus. It was paid because Maravilla "was a good employee." *Id.* at 119:5-16. It was not overtime compensation. As Victor Rosas testified, the agreement was that overtime would be paid at the regular, straight-time rate. A characterization of these extra payments as overtime would be contrary to this agreement. Also, there was no evidence as to the amount of any such bonuses, much less any correlation between the amount of the bonuses and the hours worked.[5]

Maravilla also collected unemployment benefits during weeks when he was working for Rosas Brothers, even though he was not entitled to receive such benefits – because he was not, in fact, unemployed.[6] This practice was done with the knowledge, encouragement, and assistance of Rosas Brothers, which helped complete the forms that made unemployment payments available. Victor Rosas encouraged Maravilla to apply for unemployment benefits, even during weeks where he had worked. In those instances, Maravilla's hours would be banked. Thus, although Rosas Brothers did not compensate Maravilla during those periods, Maravilla knew that the company would compensate him in the future for the work he was then performing.

Maravilla worked his last day for Rosas Brothers on July 8, 2016. He was not paid for his accumulated hours when he left.

When the matter first came on for trial, Defendants' attorney appeared without his clients. Following the conclusion of the first trial day, however, Defendants' attorney informed the Court

---

[5] There were checks called "bonus" placed into evidence, but these were not the extra money about which Victor Rosas and Maravilla testified.

[6] Maravilla testified at trial that he did not receive unemployment benefits during periods when he was working for Rosas Brothers. In his deposition, however, he admitted that he received unemployment insurance payments while also performing work for Rosas Brothers, and that testimony was read to the Court. Maravilla's testimony at trial on this point was not credible.

that Defendants had decided to participate. At their attorney's request, the Court took a one-day recess so he could prepare Victor Rosas to testify. Defendants never provided any explanation for their absence, through counsel or otherwise. The Court notes these facts because Defendants' initial unwillingness to come to court negatively affected their credibility, although the result of the trial would have been the same regardless. RT at 159:17-21 ("First of all, as I indicated earlier, it was not a positive event for the individual defendants' credibility or the corporate defendant's credibility that they decided not to participate in the trial until today, and that is whatever it is.").

## II. JURISDICTION

The Court has original jurisdiction over Maravilla's FLSA claim pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Maravilla's remaining claims because they are "so related" to the FLSA claim as to "form part of the same case or controversy." 28 U.S.C. § 1367.

## III. DISCUSSION

### A. Fair Labor Standards Act

"The Fair Labor Standards Act was designed to 'extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President to Congress, May 24, 1934). Among the protections offered to workers under the FLSA are a federal minimum wage and limits on overtime. *See* 29 U.S.C. §§ 206, 207. The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of forty hours weekly. 29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" broadly as "all remuneration for employment." 29 U.S.C. § 207(e). "Courts have defined 'regular rate' more specifically as 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" *Parth v. Pomona Valley Hosp. Med. Ctr.*, No. CV 06-04703 MMM (FFMx), 2007 WL 9193688, at *6 (C.D. Cal. Dec. 5, 2007) (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); 29 C.F.R. § 778.108). "Employers who violate this requirement are liable for damages in the amount of the unpaid overtime, "an additional equal amount as liquidated

damages," and a "reasonable attorney's fee . . . and costs." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b)). Liquidated damages are mandatory unless the employer establishes both "subjective and objective good faith in its violation of the FLSA." *Local 246 Utility Workers Union of Am. v. S. Cal. Edison*, 83 F.3d 292, 297-98 (9th Cir. 1996). To satisfy this burden, the employer must establish that it had "an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that [its] conduct complie[d] with the Act." *Id.* at 298 (internal quotation marks omitted). As relevant here, the FLSA also requires that employers pay at least the federal minimum wage, which is currently $7.25 per hour. 29 U.S.C. § 206(a).

The statute of limitations for claims under the Fair Labor Standards Act is two years, or three years for "willful" violations. *See* 29 U.S.C. § 255(a). An employer commits a willful violation if "it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130-131 (1988). For the longer limitations period to apply, "an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very 'possibility' that it was violating the statute, although [the court] will not presume that conduct was willful in the absence of evidence." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003) (citations omitted), *aff'd*, 546 U.S. 21 (2005).

In this case, Defendants' conduct was clearly willful. Rosas Brothers was found by the Department of Labor to have engaged in precisely the same illegal hours-banking practices at issue here and was required to pay a substantial monetary settlement. Nonetheless, it continued with those practices because it felt that complying with the law would be inconvenient. Accordingly, the statute of limitations ran from October 24, 2013, three years before the filing of Maravilla's complaint.

Maravilla makes two claims for unpaid wages under the FLSA: a claim for unpaid overtime during weeks in which he worked more than 40 hours a week, and a claim for violation of the minimum wage statutes for the weeks during which he worked but received no pay because

his hours were banked.[7]  Unlike California law, as discussed below, the FLSA averages all hours worked "in any work week" to compute an employer's minimum wage obligation. *Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 890 (9th Cir. 2017) (payment plan that compensated employees based on workweek average complied with FLSA's minimum wage provision); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2005 WL 2078334, at *2 (D. Or. Aug. 24, 2005) ("[T]he FLSA computes the provision of minimum wage by workweek and not by the hour, so if an employee averages the minimum hourly wage for all hours worked in a workweek, the employee does not have an FLSA minimum wage claim, even if the employee was not paid for some hours or portions of hours."), *adopted by* 2005 WL 2492932 (D. Or. Oct. 7, 2005).  Because Plaintiff earned over $60.00 per hour, he can claim FLSA minimum wage violations only for weeks he received no pay and not for weeks during which some but not all of his hours were banked.[8]

Maravilla also seeks liquidated damages under the FLSA.  For violations of the FLSA's minimum and overtime wage provisions, employers "shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Courts may deny or reduce an award of liquidated damages "where an employer shows that, 'despite the failure to pay appropriate wages, the employer acted in subjective "good faith" and had objectively "reasonable grounds" for believing that the acts or omissions giving rise to the failure did not violate the FLSA.'"  *Alvarez*, 339 F.3d at 909  (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). To state the obvious, Rosas Brothers's conduct in continuing to

---

[7] Although the FLSA claim in Maravilla's complaint is captioned "Failure To Pay Overtime," the pleading makes clear that his FLSA claim includes violation of the minimum wage requirements as well.  ECF No. 1 ¶ 18 ("In failing to pay Plaintiff overtime wages at one-and-one-half times his regular rate of pay, *and for all hours worked,* DEFENDANTS willfully violated the FLSA.").  Defendant does not contend otherwise.

[8] Because minimum wage under FLSA is calculated by workweek, it is theoretically possible for someone earning $60.00 per hour to have a valid FLSA minimum wage claim.  For example, if two hours in a given week were compensated and 38 hours were banked, the employee would receive $120.00 in pay, which is below the $290.00 minimum wage for a 40-hour workweek at $7.25 an hour.  Maravilla identifies no weeks in which he was paid some amount but his average compensation fell below the minimum wage.

flout federal wage laws after a Department of Labor investigation was not in subjective good faith. Thus, an award of full liquidated damages is appropriate.

The Court therefore determines that Maravilla is entitled to the following amounts on his FLSA unpaid overtime and minimum wage claims:

| Year | FLSA Overtime Hours | Unpaid Overtime | Liquidated Damages Unpaid Overtime | Grand Total |
|---|---|---|---|---|
| December 2013[9] | 3.0 | $100.50 | $100.50 | |
| 2014 | 79.5 | $2,735.99 | $2,735.99 | |
| 2015 | 59.0 | $2,093.02 | $2,093.02 | |
| 2016 | 14.5 | $536.13 | $536.13 | |
| **Total** | | **$5,465.64** | **$5,465.64** | **$10,931.28** |

| Year | FLSA Minimum Wage Hours | Unpaid Minimum Wages | Liquidated Damages Minimum Wage | Grand Total |
|---|---|---|---|---|
| December 2013[10] | 33.5 | $242.87 | $242.87 | |
| 2014 | 277.0 | $2,008.25 | $2,008.25 | |
| 2015 | 119.5 | $866.37 | $866.37 | |
| 2016 | 39.0 | $282.75 | $282.75 | |
| **Total** | | **$3,400.24** | **$3,400.24** | **$6,800.48** |

---

[9] Rosas Brothers resolved any FLSA liability through its November 30, 2013 settlement with the Department of Labor. Thus, any time before December 1, 2013, is either covered by that settlement, Exhibit 4, or outside the statute of limitations.

[10] Rosas Brothers resolved any FLSA liability through its November 30, 2013 settlement with the Department of Labor. Thus, any time before December 1, 2013, is either covered by that settlement, Exhibit 4, or outside the statute of limitations.

Maravilla is also entitled to an award of reasonable attorney's fees and costs.

**B.     Failure to Pay Minimum Wage (Cal. Lab. Code §§ 1194, 1194.2)[11]**

California Labor Code section 1194 provides a right to sue for unpaid minimum wages or overtime compensation.  Additionally, California Labor Code section 510 provides that:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Similarly, under California Labor Code section 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover . . . the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Cal. Lab. Code § 1194.  California Labor Code section 1194.2(a) provides that in any action under section 1194 for failure to pay minimum wage, "an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."  "Although the California Labor Code does not permit a plaintiff to recover liquidated damages for failure to pay overtime, a plaintiff who brings a claim for failure to pay overtime may recover liquidated damages under California Labor Code § 1194.2 if the plaintiff also shows that the plaintiff was paid less than the minimum wage."  *Sillah v. Command Int'l Sec. Servs.*, 154 F. Supp. 3d 891, 914 (N.D. Cal. 2015) (citations omitted).

Unlike the FLSA, California's minimum wage law does not permit averaging.  That means that Maravilla is entitled to recover liquidated damages for his uncompensated hours, even in

---

[11] The Court does not separately address Maravilla's California Labor Code overtime claim because it entirely duplicates his FLSA overtime claim.  The Court can only award damages under one statutory scheme under the general rule barring double recovery.  *See Duran v. Roshan R. Inc.*, No. C 09-04536 JW, 2010 WL 11640152, at *4 (N.D. Cal. Sept. 24, 2010) (awarding damages only under Labor Code and not the FLSA).  For the same reason, although Maravilla's Labor Code minimum wage claim does not entirely duplicate his FLSA minimum wage claim, the parties will be required to meet and confer to determine the amount by which the judgment must be reduced to avoid double recovery.

weeks where his total compensation exceeded the number of hours he worked times the minimum wage. In other words, "workers must receive the minimum wage for *each hour worked* during the payroll period." *Rhea v. Gen. Atomics*, 227 Cal. App. 4th 1560, 1574 (2014) (emphasis in original). "Compliance with [California's] minimum wage law is determined by analyzing the compensation paid for each hour worked; averaging hourly compensation is not permitted under California law." *Sheppard v. N. Orange Cty. Reg'l Occupational Program*, 191 Cal. App. 4th 289, 297 n.5 (2010). California courts decline to apply the FLSA's averaging method because "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005).

Maravilla is entitled to be compensated under the California Labor Code for the following unpaid minimum wage hours:

| Period | Minimum Wage | Minimum Wage Hours | Total |
|---|---|---|---|
| October 24, 2013 – June 30, 2014 | $8.00 | 355.0 | $2,840.00 |
| July 1, 2014 – December 31, 2015 | $9.00 | 266.5 | $2,398.50 |
| 2016 | $10.00 | 78.0 | $780.00 |
| **Total** | | | **$6,018.50** |

Maravilla is also entitled to interest on this amount, as well as an award of reasonable attorney's fees and costs.[12]

**C.     Failure To Provide Itemized Wage Statement (Cal. Lab. Code § 226**

California Labor Code section 226(a) requires employers to furnish "an accurate itemized

---

[12] The Court notes that the definition of "liquidated damages" is different under the California Labor Code than under the FLSA. "Liquidated damages" under Labor Code § 1194.2 are "an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2. By contrast, under the FLSA liquidated damages are an *additional* amount equal to the unpaid minimum wages. 29 U.S.C. § 216(b).

[wage] statement in writing," showing the total hours worked and gross wages earned by the employee, any deductions, the net wages earned, and the inclusive dates of the period for which the employee is paid, among other things. "The employer's violation of section 226 must be 'knowing and intentional.'" *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049, 1076 (N.D. Cal. 2017) (quoting *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1133 (E.D. Cal. 2015) (quoting Cal. Lab. Code § 226(e)(1))). "Good faith is not a defense to a wage statement violation under § 226." *Id.* (citation omitted).

An employee suffering injury as a result of an employer's knowing and intentional failure to comply with subdivision (a) "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e). A prevailing plaintiff under section 226(a) is entitled to an award of attorney's fees and costs as "a matter of right." *Harrington v. Payroll Entm't Servs., Inc.*, 160 Cal. App. 4th 589, 594 (2008). The penalty provision of section 226 is subject to a one-year statute of limitations. *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1024 (E.D. Cal. 2015) (citing Cal. Civ. Proc. Code § 340).

In this case, the evidence establishes that Maravilla's pay stubs violated section 226 because they did not correctly reflect his wages and hours. Also, Rosas Brothers's failure to furnish accurate wage statements was "knowing and intentional." This statutory requirement is meant to exclude "an isolated and unintentional payroll error due to a clerical or inadvertent mistake," Cal. Lab. Code § 226(e)(3), not the pervasive conduct established here. *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 813 (N.D. Cal. 2015) ("repeated nature" of defendant's omissions supported inference that its noncompliance went "beyond a mere typographical or otherwise inadvertent error"). Rosas Brothers's violations were neither isolated nor inadvertent.

Because there were 29 paystubs in the last year of Maravilla's employment that were either not provided or did not list all hours worked or wages earned, the Court awards Maravilla a penalty of $2,850.00. Maravilla is also entitled to an award of reasonable attorney's fees and

costs.

### D. Waiting Time Penalties (Cal. Lab. Code § 203)

Under California Labor Code section 203:

> a court [may] award 'an employee who is discharged or who quits' a penalty equal to up to 30 days' worth of the employee's wages '[i]f an employer willfully fails to pay' the employee his full wages immediately (if discharged) or within 72 hours (if he or she quits). It is called a waiting time penalty because it is awarded for effectively making the employee wait for his or her final paycheck. A waiting time penalty may be awarded when the final paycheck is for less than the applicable wage – whether it be the minimum wage, a prevailing wage, or a living wage.

*Diaz v. Grill Concepts Services, Inc.*, 23 Cal. App. 5th 859, 867 (2018) (emphasis and citations omitted) (second alteration in original). "The plain purpose of [Labor Code] sections 201 and 203 is to compel the immediate payment of earned wages upon a discharge. . . . The prompt payment of an employee's earned wages is a fundamental public policy of this state." *Kao v. Holiday*, 12 Cal. App. 5th 947, 962 (2017) (internal quotation marks and citations omitted).

"To be at fault within the meaning of [section 203], the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005) (quoting *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981)) (emphasis omitted).

Here, Maravilla received a check on April 8, 2016, that compensated him for his banked hours up until that date. However, he worked additional banked hours after that date, for which he was not paid until September 2016 – more than 30 days after he quit. Accordingly, the Court imposes a section 203 penalty of $17,748.00 (8 hours at $73.95 per hour for 30 days).

### E. Off-The-Clock Claim

Maravilla kept no contemporaneous record of the alleged "off-the-clock" hours he worked at the beginning of the workday, as he did with his banked hours. Moreover, Maravilla was unable even to reliably estimate the amount of off-the-clock work he performed. Even crediting his testimony that when he performed such work, he did so for at least half an hour per day, the

Court finds no reliable way to determine or even estimate the number of days on which such work was performed. The Court also finds credible Victor Rosas's testimony on this claim, at least to the extent it establishes that if Maravilla did work off-the-clock, it is not possible even to estimate how often this occurred. The Court finds for Rosas Brothers on this claim.

### F. Unfair Competition (Cal. Bus. & Prof. Code § 17200)

Maravilla also brings a claim under California Business and Professions Code § 17200 *et seq*. ("Unfair Competition Act" or "UCL"). The Unfair Competition Act prohibits any (1) unlawful, (2) unfair, or (3) fraudulent business practice or act. Cal. Bus. & Prof. Code § 17200. "Written in the disjunctive, this language 'establishes three varieties of unfair competition.'" *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2003) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996)). "With respect to the *unlawful* prong, virtually any state, federal or local law can serve as the predicate for an action under section 17200." *Id.* (emphasis in original) (internal quotation marks, citation, and alteration omitted). "'[I]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to a business activity, as unlawful practices independently actionable under section 17200 *et seq*. and subject to the distinct remedies provided thereunder.'" *Id.* (alteration in original) (quoting *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992)). "[A]ny business act or practice that violates the Labor Code through failure to pay wages is, by definition, an unfair business practice." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 178 (2000) (citation omitted).

The remedies available under the UCL are generally limited to the equitable remedies of restitution and injunctive relief, *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *13 (C.D. Cal. Sept. 27, 2016), but those remedies "are cumulative to each other and to the remedies or penalties available under all other laws of this state," Cal. Bus. & Prof. Code § 17205. A restitution claim under Business and Professions Code section 17203 has a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. "[A]n action to recover wages that might be barred if brought pursuant to Labor Code section 1194 still may be pursued as

a UCL action seeking restitution pursuant to section 17203 if the failure to pay constitutes a business practice." *Cortez*, 23 Cal. 4th at 178-79.

In this case, Maravilla relies on section 17200 to claim an additional year's worth of unpaid wages based on hours banking for which he cannot recover under his section 1194 claim: $20,497.86 earned minus $14,100.00 paid, for a balance of $6,397.86. The Court awards him this amount.

### G. Defendants' Unclean Hands Defense

Rosas Brothers originally announced an intention to assert an unclean hands defense based on Maravilla's having collected unemployment insurance during certain weeks in which he also worked for Rosas Brothers and banked his hours for later payment. Defendants abandoned the defense at trial. *See generally* ECF No. 38 (omitting any mention of this defense).

Even if Defendants asserted this defense, however, it would have failed. "Principles of equity cannot be used to avoid a statutory mandate." *Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487, 1492 (1989).

### H. Individual Defendants' Liability

The Court next turns to the question of the individual defendants' liability under both federal and state law. In their briefs to the Court, the individual defendants do not contest their liability. *See generally* ECF No. 38.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). "[T]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (internal quotation marks omitted). "Where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the [FLSA]." *Id.* at 1012 (internal quotation marks omitted). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer

along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Boucher v. Shaw*, 572 F.3d 1087, 1094 (9th Cir. 2009) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511, 1514 (1st Cir. 1983)).

To determine whether an individual is an employer under the FLSA, the Ninth Circuit applies a four-factor "economic reality" test that considers: "Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 539 (1985). "Importantly, these four factors are merely 'guidelines,' *Gilbreath v. Cutter Biological, Inc.*, 932 F.2d 1320, 1324 (9th Cir. 1991), and the Court must look to the 'totality of the circumstances' in assessing whether the economic reality test was satisfied, *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1993)." *Perez v. Jie*, No. CR13-877RSL, 2014 WL 12102178, at *2 (W.D. Wash. Dec. 18, 2014).

These factors are clearly satisfied as to each of the individual defendants here. The three Rosas brothers own and operate the business as a family concern, and both Maravilla and Victor Rosas testified to the significant role that that each Rosas brother played in operating the business. Victor, Jose Humberto, and Jose Luis all told Maravilla to record his hours inaccurately. Maravilla had conversations about hours banking with all three brothers. Each of them took turns supervising Maravilla at various job sites. On this record, the Court has no difficulty concluding that each of the individual defendants is liable as an employer under the FLSA. *See Lambert,* 180 F.3d at 1012 (CEO and COO properly deemed employers under the FLSA where they had a significant ownership interest as well as operational control of significant aspects of the company's day-to-day functions, the power to hire and fire employees, the power to determine salaries, and responsibility for maintaining employment records); *Ulin v. ALAEA–72, Inc.*, No. C-09-3160-EDL, 2011 WL 723617, at *11 (N.D. Cal. Feb. 23, 2011) (finding an individual personally liable as an employer under the FLSA when the individual "was responsible for posting, calculating, measuring, estimating, recording, or otherwise determining the hours worked

by Plaintiff, and wages paid him," and "authorized and issued payments to Plaintiff, supervised Plaintiff's work, and was responsible for recruiting, hiring, firing, disciplining, assigning jobs and setting wages for Plaintiff").

Each of the Rosas brothers is also individually liable for the violations of the California Labor Code set forth in this order. In *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), the California Supreme Court held that the definition of employer contained in Industrial Wage Commission wage orders applies to actions seeking recovery of unpaid minimum wages or overtime under section 1194. "To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.* Each of the Rosas brothers individually exercised control over Maravilla's wages, hours, and working conditions. Each of the Rosas brothers is also individually liable because each of them is an owner of Rosas Brothers Construction and each of them violated or caused to be violated sections 203, 226 and 1194 of the Labor Code. *See* Cal. Lab. Code § 558.1; *Aguilar v. Linn Star Transfer, Inc.*, No. 19-cv-01162-JCS, 2019 WL 2368628, at *2 (N.D. Cal. June 5, 2019) ("A private plaintiff may bring a claim against a corporate officer for violation of the sections of the Labor Code identified in [California Labor Code § 558.1]."); *Marquez v. NLP Janitorial, Inc.*, No. 16-cv-06089-BLF, 2019 WL 652866, at *3 (N.D. Cal. Feb. 15, 2019) ("Pascariello is alleged to have been a supervisorial agent of both NLP and CTC and has represented herself to be the principal of NLP. . . . She is thus an 'employer' for the purposes of California law, because she is an 'owner, director, officer, or managing agent of the employer.'" (quoting Cal. Lab. Code § 558.1)).

In their trial brief, Defendants request that the Court take into account their business's "modest" financial status. Defendants presented neither authority in support of this request nor evidence of their financial status, individually or otherwise. The Court declines to entertain this argument.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Plaintiff Maravilla and against

Defendants Rosas Brothers Construction, Inc.; Victor Manuel Rosas; Jose Humberto Rosas; and Jose Luis Rosas as follows: on Maravilla's FLSA overtime claim, the Court awards $10,931.28; on Maravilla's FLSA minimum wage claim, the Court awards $6,800.48; on Maravilla's California Labor Code minimum wage claim, the Court awards $6,018.50 plus interest; on Maravilla's itemized wage statement claim, the Court awards $2,850.00; on Maravilla's waiting time penalty claim, the Court awards $17,748.00; and on Maravilla's unfair competition claim, the Court awards $6,397.86. The Court finds in favor of Defendants on Maravilla's off-the-clock claim. Any judgment entered in this case must reflect that Maravilla can only recover on either his FLSA minimum wage claim or his Labor Code minimum wage claim, but not both. *See* note 11, *supra*.

Maravilla is also entitled to an award of reasonable attorney's fees and costs. Either a stipulation or motion for that relief is due 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 14, 2019

_____
JON S. TIGAR
United States District Judge